UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EXPRESS RENT-A-CAR LLC                          CIVIL ACTION

VERSUS                                          NO: 07-4356

U-SAVE FINANCIAL SERVICES,                      SECTION: R(4)
INC., ET AL.


# ORDER

Before the Court is defendants' motion for summary judgment.
Defendants' motion is GRANTED in part and DENIED in part for the
following reasons.

## I.    Background

Express Rent-a-Car, LLC (Express) operated a rental car
business at New Orleans's Louis B. Armstrong International
Airport.  In 2002, Express became a member of Auto Rental
Resource Center ("ARRC").  ARRC is a corporation that provides
benefits and services to businesses that sell or rent
automobiles.  ARRC is a subsidiary of United Risk Purchasing
Group ("United"), which provides group insurance access to ARRC
members.  One benefit that ARRC and United offer members is a
"Self-Insured Physical Damage Coverage Program" (the "self-
insured program").  This program is administered by U-Save
Financial Services ("USFS").  ARRC members can insure their
rental car fleet through the self-insured program against

specified losses, including fire, collision, flood, theft, etc., up to $42,000.00 dollars per vehicle.[1]

If a participating ARRC member incurred covered damage to a vehicle it made a claim with USFS. USFS adjusted the loss and compensated the member up to $25,000.00 dollars. For losses greater than $25,000.00 dollars, USFS obtained group insurance coverage from a third-party insurance company. The third-party insurance was excess to the self-insured program. USFS was the named insured under the third-party insurance policy, and ARRC members were certificate holders. During the time period relevant to this lawsuit, Empire Fire and Marine Insurance provided third-party excess coverage for the self-insured program. As an ARRC member, Express participated in the self-insured program. Express attests that it believed it was getting substantially different coverage through ARRC, but Express does not dispute that USFS administered its program in the manner described above.

Express sustained significant damage to its rental car fleet as a result of Hurricane Katrina. Renters did not return some cars, and others cars flooded. Several others were allegedly destroyed when the repair shop servicing the vehicles burned

_____

[1] Vehicles worth more than $42,000.00 are "handled on a pro-rata basis."

2

down.  One was stolen from Express's lot.  Express submitted
claims to U-Save for these vehicles and for business interruption
and loss damages.  According to Express, "U-Save Financial
Services, Inc., has yet to engage in adequate loss adjustment of
[Express's] claims."  On 24 August 2007, Express sued ARRC,
United, USFS (collectively "U-Save") and several insurance
companies for failure to adequately compensate it for losses
covered by the Physical Damage Program.  Express also alleges
that defendants's refusal to pay was in bad-faith under LA. REV.
STAT. §§ 22:1892 and 22:1973.[2]

U-Save now moves for summary judgment on several grounds.
U-Save argues that it cannot be held liable for bad-faith
penalties under LA. REV. STAT. §§ 22:1892 and 22:1973 because it
is not an insurer. It asserts that Express's claims for vehicles
converted by renters are excluded under the policy and argues
that it did not provide business interruption/loss coverage to
Express.  U-Save also asserts that it has already paid four of
Express's claims.  U-Save next argues that Express cannot carry
its burden to show that three vehicles were damaged because
Express did not produce these vehicles for inspection.  Finally,
U-Saves asserts that Express's coverage lapsed before a Chevy van

---

[2] Formerly LA. REV. STAT. §§ 22:658 and 22:1220.

was stolen from Express's lot.

## II.  **Summary Judgment Standard**

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest

4

upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

## III. Analysis

### i. Bad-Faith

U-Save argues that Express's claim for bad-faith penalties under LA. REV. STAT. §§ 22:1892 and 22:1973 must be dismissed because it is not an insurer. Louisiana law imposes penalties on insurers who arbitrarily or capriciously fail to pay a claim. *See* LA. REV. STAT. §§ 22:1892, 22:1973(b)(5).[3] The duty of good-faith imposed by LA. REV. STAT. §§ 22:1892 and 22:1973 applies only to insurers as defined by LA. REV. STAT. § 22:1962, and Louisiana Courts have dismissed bad-faith claims against parties that are not in the insurance business. *See Bazile v. Nestle USA, Inc.*, 939 So.2d 644 (La. Ct. App. 2006)(holding that candy bar manufacturer was not insurer and not subject to bad-faith penalties); *Thibodeaux v. Stapp Towing Co., Inc.*, 702 So.2d 693 (La. Ct. App. 1997)(holding that vessel owner was not an insurer and not subject to bad-faith penalties); *Rawls v. City of*

---

[3] The Louisiana Supreme Court has noted that both statutes incorporate the same standard and proscribe the same conduct. *Reed v. State Farm Mut. Auto. Ins. Co.,* 857 So.2d 1012 (La. 2003). The cases interpreting the two provisions are used interchangeably.

*Bestrop*, 873 So.2d 934 (La. Ct. App. 2004)(holding that municipality was not an insurer). To determine whether U-Save can be held liable for bad-faith penalties, the Court must decide if U-Save is an insurer under Louisiana law.

Under LA. REV. STAT. § 22:1962(c), an insurer is "any person, reciprocal exchange, fraternal benefit society, or any other legal entity engaged in the business of insurance, including insurance agents, insurance brokers, surplus lines brokers, and insurance solicitors." U-Save argues that it does not meet this definition because it provides a form of "self-insurance." By this, U-Save means that it insures losses up to $25,000.00 dollars itself, rather than through an outside insurance company. U-Save relies on two Louisiana cases for the argument that self insurance is not insurance at all, and thus self-insurers, like U-Save, are not subject to the bad-faith statutes. *See Hearty v. Harris*, 574 So.2d 1234 (La. 1991); *Hebard v. Dillon*, 699 So.2d 497, 500 (La. Ct. App. 1997).

U-Save's reliance on *Hearty* and *Hebard* is misplaced. *Hearty* and *Hebard* interpret the Louisiana Motor Vehicle Safety Responsibility Law (LMVSRL), Louisiana's statutory scheme governing automobile liability insurance. The law requires the "owner of every motor vehicle registered in the state of Louisiana (with the exception of certain classifications of

6

vehicles)...to maintain proof of financial responsibility."
*Hearty*, 574 So.2d at 1237 (citing LA. REV. STAT. § 32:861(A)).
One way to prove financial responsibility is to obtain a
certificate of self-insurance under the terms of LA. REV. STAT. §
32:1042. *Id.* "[T]he certificate of self-insurance indicates
that the self-insured is fiscally responsible and will pay damage
claims and judgments involving its liability exposure." *Id.* at
1238. Owners holding a self-insurance certificate do not have to
purchase liability insurance; they insure themselves. Because a
self-insured under the LMVSRL is not insured in the ordinary
sense, Louisiana courts do not consider a self-insurance
certificate an insurance "policy" and have not applied the bad-
faith statutes to self-insureds. *Hebard*, 699 So.2d at 500.

This case does not involve the type of individual self-
insurance provided for under the LMVSRL. U-Save offered ARRC
members a form of collective group insurance in which members
contribute to a common pool out of which claims are paid. The
Court has found only one Louisiana case analyzing this type of
arrangement. In *Louisiana Safety Ass'n. of Timbermen-Self
Insurers Fund v. Louisiana Insurance Guaranty Ass'n*, a Louisiana
appellate court held that a worker's compensation group self-
insurance fund was not an insurer under Louisiana law. 998 So.2d
817, 822 (La. Ct. App. 2008). The *Timbermen* court reached this

7

result based primarily on a Louisiana statute that specifically exempted worker's compensation group self-insurance programs from Louisiana insurance regulation. *Id.* (citing La. Rev. Stat. § 23:1195(A)(1)("[worker's compensation group self-insurance] shall not be deemed to be insurance and shall not be subject to the provisions of Chapter 1 of Title 22 of the Louisiana Revised States of 1950.")).

In passing, the Court also reasoned that group self-insurance, like individual self-insurance, was not insurance under Louisiana law. *Id.* at 822-23. In doing so, *Timbermen* distinguished two state Supreme Court cases. Both the Maryland and the South Carolina Supreme Courts have held that group worker's compensation self-insurance programs are to be considered insurance under state law. *See Md. Motor Truck Ass'n Workers' Comp. Self-Ins. Group v. Prop. & Cas. Ins. Guar. Corp.*, 871 A.2d 590 (Md. 2005)(holding that workers' compensation self-insurance group was insurer under Maryland law); *S.C. Prop. & Cas. Ins. Gaur. Ass'n v. Carolinas Roofing & Sheet Metal Contractors Self-Ins. Fund*, 446 S.E.2d 422 (S.C. 1994)(holding that workers' compensation self-insurance group was an insurer under South Carolina law). The *Timbermen* court found these cases clearly distinguishable because the plain language of La. Rev. Stat. § 23:1195 exempts self-insured worker's compensation

programs from regulation as insurers. 998 So.2d at 823. Neither
Maryland nor South Carolina state law provided the same
exemption. But the *Timbermen* court also emphasized that Maryland
and South Carolina state law, unlike the law of Louisiana,
treated individual self-insurance as equivalent to an insurance
policy. That Louisiana law does not treat individual self-
insurance as insurance provided the *Timbermen* court an additional
reason to distinguish these cases.

No Louisiana statute exempts U-Save from regulation as an
insurer. Consequently, the main justification for the result in
*Timbermen* is not applicable here. The Court also parts with
*Timbermen*'s reasoning to the extent that it finds *South Carolina
Property* and *Maryland Motor Truck Ass'n* distinguishable because
South Carolina and Maryland law treat individual self-insurance
as insurance. It does not follow from Louisiana's treatment of
individual self-insureds that group self-insurance should not be
considered insurance. Kentucky law, like Louisiana's, does not
treat individual self-insurance as insurance. Yet, in *Associated
Industries of Kentucky, Inc.*, the Sixth Circuit recently
concluded that a trade organization's group self-insurance
program, similar to U-Save's physical damage program, was an
"insurance plan" under Kentucky law. 531 F.3d 462, 465 (6th Cir.
2008). The Court rejected the argument that group self-insurance

9

"is not 'insurance' within the ordinary meaning of the term," and distinguished a line of cases holding that individual self-insureds were not "insurers" under the Kentucky motor vehicle laws. *Id.* The Court noted that "individual self-insurance is not 'insurance'... because it does not involve a contract whereby one undertakes to pay or indemnify *another* as to loss from...risks." *Id.* (citations and quotations omitted)(emphasis in original). By contrast, "group self-insurance participants shift their risks to another, the group self-insurance fund." *Id.*

The South Carolina and Maryland Supreme Courts relied on this important feature of group self-insurance, *i.e.*, that group insurance transfers risk, to conclude that group self-insurance is insurance. In *South Carolina Property*, the South Carolina Supreme Court reasoned:

> Since insurance traditionally involves a transfer of risk from one entity to another, it is conceptually difficult to consider [an individual] self-insured an insurer. In contrast, the members of a group self-insurer...*transfer* a portion of their risk to the group.

446 S.E.2d at 424 (emphasis in the original). Likewise, in *Maryland Motor Truck Ass'n*, the Maryland Supreme Court emphasized that "it is well recognized that risk transference and risk distribution are prime characteristics of insurance" before

10

concluding that group self-insurance is insurance under Maryland law.  871 A.2d at 597.

The Maryland Supreme Court cited to two prominent insurance treatises for the fundamental features of insurance that group self-insurance programs share.  The Court noted, "It is characteristic of insurance that a number of risks are accepted, some of which will involve losses, and that such losses are spread over all the risks in a way that enables the insurer to accept each risk at a slight fraction of the possible liability upon it."  *Id.* (citing 1 Couch on Insurance § 1.9 (3d. ed. 2004)).  The Court further explained the benefit insureds recoup from insurance:  "By paying a relatively small sum – the insurance premium – the insured policyholder receives a promise from an insurance company to pay the insured if he or she suffers a loss.  The insured avoids the risk of suffering a large loss by substituting the certainty of suffering a small one."  *Id.* (citing Kenneth S. Abraham, *Distributing Risk: Insurance, Legal Theory, and Public Policy* at 2 (1986)).

The court then made a direct analogy from these characteristics to the group self-insurance program before it. The court recognized that the group self-insurance program

"clearly provides for [] risk transference and distribution.  All claims made against a member employer

11

are investigated, adjusted, settled, litigated, and, if
necessary, paid by [the] Group, not by the member.  In
return for the premiums paid by the member, it has
transferred to the Group its liability for the payment of
claims made against it."  *Id.*

Neither *South Carolina Property* nor *Maryland Motor Truck
Ass'n* relied heavily on their state's laws governing individual
self-insureds to conclude that group self-insurance was
insurance.  Like the Sixth Circuit in *Associated Industries of
Kentucky*, these courts reached this outcome because group self-
insurance transfers risk.

Courts outside Louisiana are not unanimous in holding that
group self-insurance is insurance.  The leading case reaching the
opposite result is *Iowa Contractors Workers' Compensation Group
v. Iowa Insurance Guaranty Ass'n.*, 437 N.W.2d 909 (Iowa 1989).
But *Iowa Contractors* turned on the fact that individual members
of the self-insurance group agreed to be jointly and severally
liable for the debts of the organization.  The Court noted that
"[t]he joint and several liability provision underlying the
separate indemnity agreement between the Group and its members
materially distinguishes the arrangement from traditional forms
of insurance."  *Id.* at 916.  The Court reasoned that "No
traditional insurance policy that we are aware of requires all of

the insureds to contribute their own funds, without limitation, to satisfy the company's claims in the event of insolvency." *Id.; see also, id.* at 917 ("While it is true that the Group does assume some risk, it does not assume *all* of the risks. This is so because of the joint and several liability provision....").

*Iowa Carpenters* and its reasoning have been rejected by the more recent cases cited above. In any event, there is no indication that members of U-Save's self-insured physical damage program have signed an indemnity agreement. The Court agrees with the Sixth Circuit and the Maryland and South Carolina Supreme Courts that there is an important difference between group and individual self-insurance. Unlike individual self-insureds under the LMVSRL, members of U-Save's physical damage program transfer the risk that their vehicles will suffer a covered loss to the group fund. This type of risk-transference and loss-spreading is a "prime characteristic[] of insurance." *Md. Motor Truck Ass'n Workers' Comp. Self-Ins. Group.*, 871 A.2d at 597. For these reasons, it is likely that the Louisiana Supreme Court would conclude that group self-insurers, such as U-Save, are "insurers" within the meaning of LA. REV. STAT. § 22:1962. The Court therefore denies U-Save's request for summary judgment on Express's bad-faith claims.

   *ii.  Conversion*

U-Save next argues that Express's policy specifically excludes coverage for vehicles converted by renters and that five of Express's claims involve renter conversion.[4] Under Louisiana law, an insurance policy is a contract that constitutes the law between the parties, and it must be interpreted in accordance with the general rules of contract interpretation set forth in the Louisiana Civil Code. *See Peterson v. Schimek*, 729 So. 2d 1024, 1028 (La. 1999) (citing La. Civ. Code art. 1793; *Ledbetter v. Concord Gen. Corp.*, 665 So. 2d 1166, 1169 (La. 1996); *Crabtree v. State Farm Ins. Co.*, 632 So. 2d 736 (La. 1994)); *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988). The extent of insurance coverage is determined by the parties' intent as reflected by words in the policy. *See* La. Civ. Code art. 2045; *Peterson*, 729 So. 2d at 1028 (citing *Ledbetter*, 665 So. 2d at 1169). If the policy wording is clear, and it expresses the intent of the parties, the agreement must be enforced as written. La. Civ. Code art. 2046; *Pareti*, 536 So. 2d at 420.

At the Court's request, U-Save recently produced insurance guidelines that it alleges were in place at the time of Express's

---

[4] U-Save asserts that a 2005 Nissan Sentra, two 2003 Toyota Echos, and two 2003 Nissan Altimas were converted by renters. U-Save also asserts that a 2003 Chevy van was converted, but there is a factual dispute over whether this vehicle was stolen off the lot or was converted by a renter. The Chevy van claim is discussed further in the coverage lapse section, *infra*.

claim. (*See* R. Doc. 80-3, at 6-16.) These guidelines draw a distinction between theft and conversion. A loss due to theft is covered, but a "'loss' or damage due to conversion, embezzlement, secretion, trick, scheme or abandonment" is not. (*Id.* at 10-11.) The difference between uncovered conversions and covered thefts is explained in the section that describes how losses are paid. That provision states: "Theft losses are considered theft when the vehicle is stolen from the renter, not when the renter fails to return the vehicle (conversion)." (*Id.* at 8.) Together these provisions are clear. There is no coverage when a renter steals an automobile.

Express raises two arguments to avoid the conversion exclusion. It argues that U-Save never delivered the guidelines and that the guidelines should be reformed to comply with the Empire Fire and Marine excess policy.

a. *Delivery*

Louisiana law requires insurers to deliver written insurance contracts to insureds within a reasonable time after issuance. *See* La. Rev. Stat. 22:628, 22:634. If the insurer fails to deliver the insurer a policy, it cannot later enforce any exclusionary provisions. *See Louisiana Maintenance Serv., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1252 (La. 1993). "Notice of any exclusionary provisions is

15

essential because the insured will otherwise assume the desired coverage exists." *Id.* (citing *Spain v. Travelers Ins. Co.*, 332 So.2d 827 (La. 1976).

Express attests that it "never received a copy of the U-Save Financial Services, Inc. Physical Damage Program Insurance Guidelines or any other Guidelines that U Save now states is applicable to this case until after Hurricane Katrina." (R. Doc. 44, at 10.)  In response, U-Save provides the sworn affidavit of its insurance director stating that U-Save mailed the guidelines to members each year.  (R. Doc. 80-3, at ¶ 11.)("Each year the Guidelines are mailed to Program participants, including but not limited to Express Rent-A-Car, LLC.").  U-Save's affidavit also states that the "Guidelines for the period covering December 1, 2004 to December 1, 2005 were mailed to Express Rent-A-Car, LLC." (R. Doc. 80-3, at ¶ 11.)  But U-Save's insurance director does not purport to have personal knowledge that U-Save mailed the guidelines to Express, and U-Save provides no documentation to support his claim.  Because whether U-Save delivered Express a copy of the guidelines is contested, summary judgment on Express's conversion claims is inappropriate.

  b.  *Reformation*

Express has also argued that the guidelines should be reformed to provide coverage for renter theft because the

"product issued by U Save to Express for physical damage coverage did not represent the coverage Express thought it was getting...." (R. Doc. 86, at 7.) Apparently, Express believed that U-Save would acquire primary coverage similar to the Empire Fire and Marine excess policy. Express argues that the guidelines should be "conformed to fit the provisions of the Empire policy which does not specifically exclude theft by renter." (R. Doc. 44, at 11.) There are several problems with this argument.

"As other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties." *Samuels v. State Farm Mut. Auto. Ins. Co.*, 939 So.2d 1235, 1240 (La. 2006)(citations omitted). Express has not identified any evidence of mutual mistake or fraud here. This is not a case in which the policy fails to reflect the parties's mutual intent because of a typographical or scrivener's error. *See, e.g., Samuels*, 939 So.2d at 1240-41 (reforming contract to correct clerical error in insurance contract). The only party that thought it was getting coverage for conversion was Express. To reform a contract based on mistake, "the error or mistake must be mutual." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 274 (5th Cir. 1987)(citing *Southwest Gas Producing Co. v. Hattie Bros.*, 88

17

So.2d 649, 654 (La. 1956); *Amoco Production Co. v. Texaco, Inc.*,
415 So.2d 1003, 1007 (La. Ct. App. 1982). Here, it is clear that
U-Save did not intend to provide conversion coverage under the
self-insured program. The affidavit of U-Save's insurance
director states that U-Save does not provide this coverage, and
its insurance guidelines confirm this assertion. (R. Doc. 80-3,
at 5-16.) Express's unilateral mistake does not support
reformation. *Dredging Supply Co., Inc. v. American First Ins.
Co.*, No. 06-1744, 2008 WL 38515187, at *5 (E.D. La. Aug. 13,
2008)("The summary judgment record betrays Dredging Supply's
assertion that it was the *mutual* intent of the parties that
chartered vessels would be covered by Great American's policy.");
*LeMarie v. Lone Star Life Ins. Co.*, No. 00-0570, 2000 WL 1678009,
at *9 (E.D. La. Nov. 7, 2000)("Unfortunately, the only error in
this instance seems to be on the part of plaintiff. Such
unilateral error is not a sufficient basis to reform an insurance
contract.").

Neither has Express identified any evidence that U-Save
fraudulently caused Express to believe that it was covered for
renter theft. *See Shelton v. Standard/700 Assoc.*, 798 So.2d 60,
64 (La. 2001)(Fraud requires a misrepresentation, suppression, or
omission of true information and an error induced by a fraudulent
act that relates to a circumstance substantially influencing the

victim's consent to (a cause of) the contract). There is no evidence that Express communicated to U-Save that it wanted renter theft coverage. Further, Express cannot point to any specific representation by U-Save that it would or did provide such coverage to Express. Express repeatedly emphasizes that the Empire excess policy does not exclude conversion and that its certificate of insurance referred to Empire as the insurer. Express did not, however, receive a copy of the Empire policy until after this lawsuit was initiated. (R. Doc. 86, at 5)("Neither I nor any Express employee received a copy of the Empire Fire and Marine Insurance Company Auto Rental Physical Damage Insurance Policy...."). Moreover, Express does not present any evidence that it otherwise knew what coverage Empire provided for primary insurance at the time or that Empire primary policies, in fact, covered renter theft when it contracted with U-Save. Express points only to its own subjective belief that it would receive this coverage and an Empire *excess* policy, turned over after-the-fact. These allegations are insufficient to create an issue of fact that U-Save fraudulently misrepresented that Express was covered for renter theft. Defendants are entitled to summary judgment dismissing Express's reformation claims.

> *iii. Business Interruption and Loss*

U-Save argues that it "did not provide loss of business and/or business interruption coverage to Express Rent-A-Car, LLC." "Under Louisiana law, the insured must prove that the claim asserted is covered by [its] policy." *Dickerson*, 2009 WL 130207 (5th Cir. 2008)(citing *Jones v. Estate of Santiago*, 870 So.2d 1002, 1010 (La. 2004); *Comeaux v. State Farm Fire and Cas. Co.*, 986 So.2d 153, 157-58 (La. Ct. App. 2008)). Because Express bears the burden to prove coverage, U-Save may satisfy its burden on summary judgment by pointing out that the record contains insufficient proof that coverage exists. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to Express, who must, by submitting or referring to evidence, set out specific facts showing a genuine issue of material fact. *See Celotex*, 477 U.S. at 324.

Express does not address U-Save's coverage denial in its Memorandum in Opposition or its recently submitted affidavit. Further, it has not produced any document indicating that U-Save or any other entity provided Express with business interruption or loss coverage. Express mentions business interruption/loss coverage only once, in its Statement of Contested Facts. (R. Doc. 44-2.) There, Express asserts that "missing pages of the Empire Policy provide for business and/or business interruption coverage and have been intentionally not produced in discovery."

(*Id.* at 2.)  An unsupported assertion in a statement of contested facts is not competent summary judgment evidence, *Metrpolitan Wholesale Supply, Inc. v. M/W ROYAL RAINBOW*, 12 F.3d 58, 61 fn. 3 (5th Cir. 1994), and Express provides no other evidence to support its claim that the Empire policy provides business interruption coverage.  Notably, Express's trial exhibits contain a seemingly complete Empire Insurance policy that lacks business interruption/loss coverage.  (*See* Pl.'s Trial Ex. 6.)  It is Express's obligation to produce evidence that U-Save provided it business interruption/loss coverage.  It has not done so. Accordingly, U-Save's Motion for Summary Judgment on this claim is granted.

  *iv.  Accord and Satisfaction*

  In its Motion, U-Save states that the "claims for damage to the 2003 Ford Escape (5.a), 2003 Ford Focus (5.b), 2003 Ford Focus (5.c), and 2003 Nissan Sentra (5.e) have already been paid, waiving the deductible on three (3) of the vehicles."  U-Save cites no law, but it plausibly argues that payment released these claims by accord and satisfaction.  *See, e.g., Fischbach and Moore, Inc. v. Cajun Elec. Power Co-op., Inc.,* 799 F.2d 194, 197 (5th Cir. 1986)("The common law doctrine of accord and satisfaction embraces the discharge of an obligation by a debtor rendering, and a creditor accepting, performance different from

that the creditor claims due."). U-Save provides no evidence that these checks were negotiated, and Express attests that "Said checks were never cashed and were returned to U Save as inadequate." (R. Doc. 44-3, at 2.) Although U-Save tendered Express an offer to resolve the disputed claims, Express did not accept. (*See id.*) Express returned the checks to U-Save unsigned. (*Id.*) Because U-Save has not shown that Express accepted its offer to settle the disputed claims, it is not entitled to summary judgment. *See HWW Enterprises, Inc v. Environmental Treatment Team, LLC*, 952 So.2d 837, 841 (La. Ct. App. 2007)("[T]he Court is of the belief that there was no acceptance of the lesser amount by HWW; therefore, accord and satisfaction does not apply.").

*v.  Failure to Produce for Inspection*

U-Save argues that "it is impossible for Plaintiff to carry its burden of proof as to what damage, if any, was sustained" on three of Express's claims[5] because "[t]hese vehicles have never been produced for inspection." While it is true that a party seeking to recover damages must present evidence, *Prunpty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 652 (5th Cir. 1994)("It is truistic, indeed elementary, that one who seeks compensatory

---

[5] These claims include the 2003 Nissan Murano, 2003 Toyota Corolla, and 2003 Nissan Altima.

damages must present evidence of those damages.")(citing B.

Dobbs, *Remedies* § 3.2, at 140 (1973)), Express has done so here.

Express attests that these vehicles were destroyed in a repair

shop fire and later removed by FEMA. (*See* R. Doc. 44-3, at 1-2.)

If Express's account is true, these vehicles are a total loss.

Express also provides an affidavit stating the value of these

vehicles. (*See* R. Doc. 44-4.) U-Save gives no reason and cites

no law why Express's failure to produce these vehicles for its

inspection makes it "impossible" for Express to show damages at

trial. U-Save is not entitled to summary judgment on these

claims.

   *vi. Coverage Lapse*

   Finally, U-Save argues that Express cannot recover for the

October 1, 2005, theft of a Chevy van because Express's coverage

lapsed for non-payment on September 26, 2005.[6] The Court denies

summary judgment on this claim for several reasons.

   "In cases where the insurer defends on the ground of

cancellation, the insurer carries the burden of establishing the

---

   [6] In the alternative, U-Save asserts that the Chevy van was
converted. Express, however, lists the Chevy Van as a "theft
from the lot." (R. Doc. 44 at 2.) In an accident report, an
Express employee describes the van as a "Stolen vehicle" that was
"Took off our lot with locked gates." (R. Doc. 36-4 at 33.) In
the "Renter Information" block of the report, the employee wrote
"None." (*Id.*) This factual dispute prevents the Court from
granting summary judgment on this claim.

facts which relieve or limit its liability." *Skipper v. Federal Ins. Co.*, 116 So. 2d. 520, 524 (La. 1959); Accardo v. Clarendon Nat'l Ins. Co., 751 So.2d 975, 977 (La. Ct. App. 2000). The Coverage Guidelines U-Save relies on do not explain under what circumstances a policy can be cancelled. (R. Doc. 44-7.)  The Louisiana Insurance Code, however, requires that insurers provide insureds written notice of cancellation "not less than ten days" before a policy is cancelled for non-payment.  LA. REV. STAT. § 22:887(4), (original version at LA. REV. STAT. § 22:636 ; *Broadway v. All-Star Ins. Corp.*, 285 So.2d 536, (La. 1973)(cancellation not effective without proper notice)(citing *Skipper,* 116 So. 2d. at 523).  Further, Express has directed the Court to an Emergency Rule promulgated by the Louisiana Commissioner of Insurance after Hurricanes Katrina and Rita that suspended the right of commercial property insurers to cancel or not renew the policy of an insured affected by Katrina or Rita. *See Historic Restoration, Inc. v. RSUI Indem. Co.*, 955 So.2d 200, 204-05 (La. Ct. App. 2007)(discussing Emergency Rule 23).  This rule provides an exception that allows cancellation for non-payment of premiums, but only if the insurer provides "notice of cancellation in accordance with the applicable statutory time period mandated by the Louisiana Insurance Code for" commercial property insurance.  Rule 23 § 4307(A)(1).

U-Save has not attached any evidence that proper notice was provided. U-Save's Director of Insurance states that U-Save terminated Express's policy before the theft (*See* R. Doc. 36-3. at 3), but this statement does not establish that Express's policy lapsed as a matter of law. *Cf. Auto Owners Ins. Co. v. Freret*, 280 So.2d 638, 641 (La. Ct. App. 1973)("Smith's allegation that the policy expired March 10, 1970, and was not renewed, is not a statement of fact but a conclusion of law which may or may not be true in fact."). U-Save is required to "establish[] the facts which relieve or limit its liability." *Skipper,* 116 So. 2d. at 523. Because U-Save has not established that it gave Express proper notice that its policy was being cancelled for non-payment, U-Save has not carried this burden on summary judgment.

The Court also notes that there is a factual dispute over when the Chevy van was stolen. Express asserts that the van was stolen in August 2005, before any potential lapse in coverage. Express's site manager, Ray Worthy, states in his affidavit that "the Chevy Van was stolen from the airport at the time of the Hurricane," but "was not determined to be stolen until October 1, 2005, at which time the claim was made to the police as a stolen car which is reflected on the [police] report." (R. Doc. 44-3, at 3). Worthy goes on to say that "Express's report may be

inaccurate as to the date of the occurrence since we were told by Kenner police to wait 30 days before making a stolen car report as a theft." (*Id.*)  If Worthy's account is true, then the theft occurred before Express's coverage allegedly terminated on 26 September 2005.  This disputed question of fact further prevents the Court from entering summary judgment on this claim.


## IV.  Conclusion

For the reasons stated above, U-Save's motion for summary judgment on Express's business interruption/loss coverage claim is GRANTED.  U-Save's motion is denied on the remaining claims.


New Orleans, Louisiana, this <u>10th</u> day of June, 2009.

*Sarah Vance*

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE